IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:20-cr-00060

JUSTIN ANDREW BEARDSLEY

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Justin Beardsley's Motion to Suppress for Lack of Reasonable Suspicion to Initiate the Traffic Stop [ECF No. 32]. The Government has failed to respond and the Motion is now ripe for decision. Though a hearing on this Motion is currently scheduled for September 28, 2020, Defendant asserts in his Motion that he "is not contesting the factual circumstances surrounding the stop." [ECF No. 32, at 6]. Instead, Defendant argues that the factual circumstances do not meet the relevant legal standards. *See id.* Because this Motion presents only a legal question rather than a factual one, a hearing is not necessary. *See United States v. Taylor*, 13 F.3d 786, 789 (4th Cir. 1994); *see also United States v. Griffin*, 81 Fed. Appx. 815, 816 (4th Cir. 2020) ("First, an evidentiary hearing is not always required to resolve a motion to suppress."). Therefore, the hearing scheduled for September 28, 2020, is **CANCELLED**. For the reasons that follow, the Motion to Suppress [ECF No. 32] is **DENIED**.

I. **Background and Factual Findings**

On May 12, 2020, a grand jury indicted Defendant for Possession with Intent to Distribute a Quantity of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count I), and Using and Carrying of Firearms During a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count II). The methamphetamine and firearms that are the subject of the indictment were discovered during a vehicle search after Defendant was arrested subsequent to a traffic stop by Officer Joshua Thrasher of the Parkersburg Police Department. The stop occurred on June 1, 2019, in Parkersburg, West Virginia. Defendant now argues that the methamphetamine and firearms should be suppressed because Officer Thrasher did not possess reasonable suspicion to initiate the traffic stop.

Defendant does not contest the factual circumstances surrounding the stop as they are described by Officer Thrasher in his Primary Report, which Defendant attached to his Motion as Exhibit 1. *See* [ECF No. 32, at 6 ("The Defense is not contesting the factual circumstances surrounding the stop.")]. Therefore, I find the following relevant facts occurred during the traffic stop.

At approximately 3:00 a.m. on the morning of June 1, 2019, Officer Thrasher observed a silver Nissan, driven by Defendant, traveling north on Lynn St. toward 16th St. in Parkersburg. *See* [ECF No. 32 at 1; ECF No. 32-1, at 1]. Officer Thrasher pulled out behind the vehicle and observed Defendant signal a right turn but then turn left. *See id.* Officer Thrasher further observed that the vehicle "had a busted rear windshield which was taped with black tape causing the view to be obstructed."

[ECF No. 32-1, at 1]. After the vehicle made the left turn, Officer Thrasher followed it for one block before the vehicle pulled into a Go Mart and parked at a gas pump. *See id.* Officer Thrasher parked in the rear of the Go Mart and observed Defendant exit the vehicle, pump ten dollars' worth of fuel, and then walk to the window of the gas station. *See id.* Approximately five minutes later, Defendant returned to the vehicle with a bottle of Dr. Pepper soda and an unidentified female. *See id.* The female got into the driver's seat and Defendant sat in the passenger seat. *See id.* The vehicle then backed away from the gas pump, turned onto 16th St., and then attempted to pull back into the Go Mart parking lot. *See id.* At that time, Officer Thrasher initiated the traffic stop. *See id.*

Upon stopping the vehicle, Officer Thrasher approached the passenger side and asked both Defendant and the female for drivers' licenses and the vehicle information. *See* [ECF No. 32-1, at 1]. Neither Defendant nor the female had identification, but they advised Officer Thrasher of their names. *See id.* Officer Thrasher checked both names for associated divers' licenses and warrants. *See id.* At that time, another officer, Sgt. Eichhorn, responded with a K-9. *See id.* Sgt. While Officer Thrasher was checking the names, Sgt. Eichhorn utilized the K-9 to conduct a sniff of the exterior of the vehicle, and the K-9 returned a positive indication for the odor of a controlled substance. *See id.* After the sniff, central dispatch advised Officer Thrasher that Defendant had an active warrant. *See id.* Officer Thrasher removed Defendant from the vehicle, placed him under arrest, and secured him in the rear of

the patrol car. *See id.* Officers then conducted a search of the vehicle which revealed the drug and firearm evidence Defendant now seeks to suppress. *Id.*

## II. Legal Standards

### A. Motions to Suppress

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005). The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson,* 655 F.2d 559, 561 (4th Cir. 1981). Once a defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974).

### B. Traffic Stops and Vehicle Searches

It is well-established that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure'" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). A traffic stop, therefore, must satisfy the Fourth Amendment's reasonableness limitation. *See id.* at 810. Because a traffic stop "is more akin to an investigative detention than a custodial arrest," courts apply the two-prong standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968) to determine whether a stop is reasonable. *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015).

Pursuant to *Terry*, a traffic stop is reasonable when (1) the "stop [i]s legitimate at its inception" and (2) "the officer's actions during the seizure [are] reasonably

4

related in scope to the basis for the traffic stop." *United States v. Bowman*, 884 F. 3d 200, 209 (4th Cir. 2018) (internal quotation marks and citations omitted). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 809–10. "Without question, such a violation may include failure to comply with traffic laws." *United States v. Palmer*, 820 F.3d 640, 649 (4th Cir. 2016). As to the second prong, even a stop that is initially reasonable can become unlawful when "is it prolonged beyond the time reasonably required" to complete the ordinary tasks associated with the reason for the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Ordinary tasks related to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015). An officer may "inquir[e] into matters unrelated to the justification for the traffic stop, and may take other actions that do not constitute 'searches' . . . such as conducting a dog-sniff of the vehicle, . . . only so long as those inquiries [or other actions] do not measurably extend the duration" of the traffic stop. *United States v. Vaughan*, 700 F.3d 705, 710 (4th Cir. 2012) (internal quotation marks and citations omitted).

An officer may not ordinarily search a vehicle even during a valid traffic stop. To search the vehicle, the officer must "obtain[] consent, secure[] a warrant, or develop[] probable cause to believe the vehicle contains evidence of criminal activity. *Palmer*, 820 F.3d at 650; *see also United States v. Boggess*, 444 F. Supp. 3d 730, 736

(S.D.W. Va. 2020) ("To conduct a search of an automobile without a warrant, police must have probable cause to believe that the car contains contraband."). A "trained drug dog's alert on the vehicle" is "sufficient to establish such probable cause." *Palmer*, 820 F.3d at 650 (citing *United States v. Kelly*, 592 F.3d 586, 592 (4th Cir. 2010)).

### III. Discussion

Defendant argues that suppression of the drug and firearm evidence in this case is required due to "1) the warrantless stop of the Defendant's vehicle, 2) the warrantless detention, and 3) the ensuing warrantless canine 'sniff' and physical search of the vehicle." [ECF No. 32, at 2]. I address each below.

#### A. The Traffic Stop

Pursuant to *Terry*, the first question is whether the traffic stop was "legitimate at its inception." *United States v. Bowman*, 884 F. 3d 200, 209 (4th Cir. 2018) (internal quotation marks and citations omitted). Defendant argues that Officer Thrasher had no justifiable reason to initiate the traffic stop because Defendant had already parked and exited the vehicle and, at the time of the stop, Defendant was no longer the driver. *See* [ECF No. 32, at 6]. Defendant argues that the time for reasonable suspicion or probable cause "had elapsed when the officer did nothing" after observing Defendant make a left turn instead of the signaled right turn. *Id.* In other words, Defendant argues that he cannot be stopped for a traffic violation if the officer does not immediately act. I need not decide this question, however, because at the time Officer Thrasher initiated the traffic stop, he was justified in doing so.

As the Fourth Circuit has explained, "[w]ithout question," an officer may initiate a traffic stop for a violation such as "failure to comply with traffic laws." *United States v. Palmer*, 820 F.3d 640, 649 (4th Cir. 2016). West Virginia law specifically states, "No person shall drive any motor vehicle with any . . . nontransparent material upon the front windshield . . . or rear windows of such vehicle which obstructs the driver's clear view." W. Va. Code § 17C-15-36(a).[1] Therefore, I find that when Officer Thrasher observed the female drive the vehicle onto 16th St. with a "busted rear windshield which was taped with black tape," *see* [ECF No. 32-1, at 1], he was justified in initiating the traffic stop. The traffic stop thus comports with the first prong of *Terry*.

### B. The K-9 Sniff

Having determined that the traffic stop was legitimate at its inception, the next question, pursuant to *Terry*, is whether "the officer's actions during the seizure [were] reasonably related in scope to the basis for the traffic stop." *United States v. Bowman*, 884 F. 3d 200, 209 (4th Cir. 2018) (internal quotation marks and citations omitted). That is, whether the initially lawful stop became unlawful by being "prolonged beyond the time reasonably required" to complete the ordinary tasks associated with the reason for the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). As explained above, ordinary tasks related to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the

---

[1] Chapter 17C of the West Virginia Code is entitled "Traffic Regulations and Laws of the Road."

7

driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015). And, an exterior K-9 sniff is not a "search,"[2] and is not unlawful unless it extends the duration of the stop. *See United States v. Vaughan*, 700 F.3d 705, 710 (4th Cir. 2012)

Here, the undisputed facts are that Sgt. Eichhorn responded and used the K-9 to conduct the exterior sniff *before* central dispatch returned the warrant search on Defendant and the female driver. *See* [ECF No. 32-1, at 1]. Therefore, I find that Officer Thrasher did not prolong the stop beyond the time necessary to complete the ordinary tasks. Thus, the stop also does not violate *Terry*'s second prong.

### C. The Vehicle Search

Finally, Defendant argues in passing that suppression is required here because of "the ensuing warrantless . . . physical search of the vehicle." [ECF No. 32, at 2]. Though Defendant makes no further argument as to how the physical search of the vehicle was unlawful, his contention is without merit. As I have explained, officers may search a vehicle without a warrant if they have "probable cause to believe that the car contains contraband." *United States v. Boggess*, 444 F. Supp. 3d 730, 736 (S.D.W. Va. 2020). And probable cause is established by a "trained drug dog's alert on the vehicle." *United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016).

Because the K-9, during a valid exterior sniff, returned a positive indication for "the odor of a controlled substance," [ECF No. 32-1, at 1], I find that Officer Thrasher had probable cause to search the vehicle without a warrant.

---

[2] Because a K-9 sniff is not a search, Defendant's argument that the sniff was "warrantless" is irrelevant and without merit.

## IV. Conclusion

Based on the foregoing, I find that the traffic stop, K-9 sniff, and subsequent vehicle search were supported by law.[3] Defendant has not established a sufficient basis for his Motion to shift the burden of proving admissibility to the Government. *United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974). Accordingly, the Motion to Suppress [ECF No. 32] is **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: September 23, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[3] Defendant also argues in his Motion that certain evidence found during the vehicle search must be suppressed because, in his view, the Government will be unable to show a "nexus of possession" because Defendant was not the only occupant in the vehicle. [ECF No. 32, at 9–13]. This argument is irrelevant for purposes of a motion to suppress, and I do not address it here. Whether the Government succeeds at proving the element of possession is an issue for trial.